662 P.2d 1044

**DE ANZA LAND AND LEISURE CORP., an Arizona corporation, Plaintiff-Appellee,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of the San Francisco National Bank, Defendant-Appellant.**

1 CA–CIV 5538.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 4, 1983.

Rehearing Denied March 2, 1983.

Review Denied April 26, 1983.

Lewis & Roca by John P. Frank, Joseph E. McGarry, Susan M. Freeman, Geoffrey H. Walker, Phoenix, for defendant-appellant.

Fennemore, Craig, von Ammon & Udall by John J. O'Connor III, Scot Butler III, Leigh Brecheen, Phoenix, for plaintiff-appellee.

OPINION

GRANT, Judge.

The basic issue raised by this appeal is whether successive judgment renewals have always been effective in Arizona. Facts necessary to determine this issue and certain collateral issues are as follows.

In the action below appellee De Anza Land and Leisure Company (De Anza) claimed an interest in monies due on a promissory note from Ray Development Company to Capitol Coal and Coke Company by virtue of assignment of the note to De Anza. The note and the security given for it included a mortgage on real estate in Yavapai County referred to as the "Wine Glass Mortgage." The note and mortgage were assigned to various parties and ultimately to De Anza. The Federal Deposit Insurance Corporation (FDIC) is the successor in interest to the defunct San Francisco National Bank. In that capacity FDIC owns an asset known as the Sybil White Stoller Foreclosure Judgment for the benefit of the bank's creditors. The Stoller Judgment was entered by the Superior Court of Arizona, Yavapai County, in November, 1961, in Cause No. 21340, which was a mortgage foreclosure proceeding on substantially the same property as that covered by the Wine Glass Mortgage. The court ruled in the Stoller Judgment that Stoller's mortgage and the indebtedness it secured were prior and superior to any and all rights and interest in the property of Wine Glass Ranches Inc., the principal defendant in that suit. Wine Glass Ranches Inc. thereafter created the Wine Glass Mortgage, recorded January 8, 1962, which De Anza foreclosed in the trial court below. The Stoller Judgment was recorded on December 5, 1961, more than a month before the Wine Glass Mortgage was recorded.

Because both the Wine Glass Mortgage and the Stoller Judgment affect substantially the same real property, the Wine Glass Mortgage expressly states that it excludes from the warranties of free and clear title to the property conveyed to the mortgagee the rights of Sybil White Stoller under a judgment and agreement entered in Cause No. 21340, Yavapai County Superior Court. The Wine Glass Mortgage also expressly states that the mortgagor agrees to pay all amounts due under the Stoller mortgage and judgment. Therefore, De Anza's original predecessor in interest took the mortgage expressly subject and junior to the Stoller Judgment now held by FDIC.

Pursuant to A.R.S. § 12–1612(A), an Affidavit for Renewal of the Stoller Judgment was filed by FDIC in Yavapai County Superior Court and recorded on November 17, 1966, by the county recorder of Yavapai County. A second renewal affidavit was filed by FDIC and recorded on November 5, 1961, and a third affidavit was filed and recorded on October 18, 1976.

In the trial court, De Anza sought to foreclose the Wine Glass Mortgage, thereby terminating the Stoller Judgment, among others, as an expired title encumbrance. On April 5, 1973, FDIC filed a motion to dismiss, or in the alternative, a motion for summary judgment against De Anza, in order to establish the priority of its judgment lien over De Anza's mortgage interest. The motion was denied.

Following amendments to the controlling statute A.R.S. § 12–1612, FDIC renewed its motion for summary judgment on August 31, 1976. This motion was also denied and De Anza's cross-motion for an order under rule 56(d), Rules of Civil Procedure, 16 A.R.S., was granted. FDIC filed a special action in the Arizona Supreme Court to obtain a stay of the trial court's order pending this appeal. The supreme court declined to accept jurisdiction of the petition. After a trial, final judgment was entered on May 9, 1980, foreclosing De Anza's security against FDIC and other defendants. The judgment decreed that the right, title, interest, lien, security and claims of all defendants including FDIC are inferior to De Anza's lien and security. FDIC filed this timely appeal.

Arizona has had a judgment renewal statute since territorial days. The 1913 civil code provided:

§ 580. Any judgment rendered in any court of this state or of the Territory of Arizona, may be renewed by action brought thereon in any court of competent jurisdiction within this state at any

time within five years after the date of such judgment.

§ 581. Any judgment directing in whole or in part the payment of money which has been heretofore, or may hereafter, be duly entered and docketed in the judgment docket in the office of the clerk of any superior court of this state, . . ., may be renewed, and the lien thereof continued for a further period of five years from and after the filing of the affidavit for renewal, as hereinafter provided.

The 1928 revised code, § 3861 provided for judgment renewal in the same manner as the 1913 code. The 1939 code provided as follows:

§ 22–101. Action in five years.—A judgment may be renewed by action thereon at any time within five [5] years after the date of such judgment.

§ 22–102. Renewal of judgment by affidavit.—A judgment for the payment of money which has been entered and docketed in the judgment docket of the United States District Court or superior court, . . ., may be renewed by filing with the clerk of the proper court an affidavit for renewal.

Prior to the 1976 amendment A.R.S. § 12–1612 read as follows:

A. A judgment for the payment of money which has been entered and docketed in the civil docket . . ., may be renewed by filing an affidavit for renewal with the clerk of the proper court.

By emergency enactment effective June 27, 1976, the Arizona legislature amended the judgment renewal statutes. Session Laws 1976, Ch. 130, § 3, added two new subsections to A.R.S. § 12–1612:

E. Additional and successive renewal affidavits as provided in subsection B may be made and filed within ninety days of expiration of five years from the date of the filing of a prior renewal affidavit.

F. Recorded judgments which have been timely renewed by a renewal affida-vit and successive affidavits, even if such successive affidavits were not authorized by prior law, may be renewed as provided in this section if the prior renewal affidavits were filed within ninety days from the expiration of each successive five year period.

FDIC claims that successive judgment renewals have always been effective in Arizona. De Anza claims that neither the judgment renewal statutes prior to 1976 nor the case law provided for or authorized successive renewals of judgments. De Anza also claims that the 1976 amendment to A.R.S. § 12–1612 cannot be applied retroactively to a lien holder in De Anza's position. De Anza therefore is claiming that FDIC's judgment lien expired in 1971 and De Anza's lien advanced in priority. De Anza argues that mortgage lien priority status is a vested right and therefore to give the 1976 amendment retroactive effect would be unconstitutional as it would destroy an existing vested right.

The Arizona Supreme Court has touched upon the question of whether a judgment may be renewed more than once by affidavit. *McBride v. McDonald,* 25 Ariz. 207, 215 P. 166 (1923). In that case the original judgment was rendered in the district court of the second judicial district of the Territory of Arizona, Cochise County, on June 25, 1909. Within ninety days of the expiration of five years from that time, May 22, 1914, the appellees filed in the office of the clerk of superior court their affidavit for its renewal; and on May 10, 1919, they filed in the same court their affidavit for its second renewal. The question of the sufficiency of these affidavits of renewal was raised. The supreme court, relying on the Civil Code of 1913, held that any judgment directing the payment of money which had been entered and docketed by the clerk of the superior court of this state could be renewed by affidavit. The case therefore implicitly approves successive renewals of judgments. The actual question decided by the case was whether judgments rendered by territorial

courts were on the same footing as judgments rendered by state courts giving holders of each the same rights to renew by affidavit. The case held that the courts were on equal footing and upheld the validity of the renewals. FDIC claims that McBride has been the guideline by which practitioners have routinely renewed judgments more than once, since the court's holding necessarily determined that second renewal affidavits extend validity and enforceability of judgments.

The next opinion on this issue was from this court, *Coggins v. Wright,* 22 Ariz.App. 217, 526 P.2d 741 (1974).[1] That case states:

There is no provision in either of the previously two mentioned statutes [A.R.S. § 12–1612 and A.R.S. § 12–1613(B)] for filing a subsequent renewal affidavit. The only renewal affidavit allowed is the one to be filed within ninety days preceding the expiration of five years from the date of judgment.

*Id.* at 218, 526 P.2d at 742. However, FDIC argues that this language is merely dicta as it was not necessary to the holding in the case. We agree. The court in *Coggins v. Wright* went on to say: "Even if judgments could be renewed *ad infinitum* appellant's renewal attempt on May 12, 1969 was invalid because the judgment expired on April 23, 1969, five years after the the April 23, 1964 renewal." *Id.* Thus, the opinion involves the situation where a timely affidavit is not filed. There was no petition for review filed in *Coggins v. Wright.* Additionally, the opinion refers to no authority for the dicta regarding subsequent judgment renewals, nor does it mention or discuss *McBride v. McDonald.*

FDIC claims that the 1928 and 1939 reenactments of A.R.S. § 12–1612 confirm successive affidavit renewals because those reenactments of the judgment renewal statutes contain substantially the same language which had been construed in *McBride*

*v. McDonald.* Therefore, argues FDIC, the legislature demonstrated its agreement with the court's interpretation of the viability of successive renewals. See *Cagle v. Butcher,* 118 Ariz. 122, 575 P.2d 321 (1978); *Jackson v. Northland Construction Co.,* 111 Ariz. 387, 531 P.2d 144 (1975); *Madrigal v. Industrial Commission,* 69 Ariz. 138, 210 P.2d 967 (1949).

FDIC then claims that any confusion created by *Coggins v. Wright* was cleared by the 1976 amendments to A.R.S. § 12–1612 confirming the statutory validity of successive timely judgment renewals. This amendment erased any doubt about the legislative intent to authorize successive judgment renewals particularly in light of the fact that it was passed by emergency legislation effective on June 27, 1976. This amendment to the judgment renewal statutes has been interpreted by Arizona appellate courts only once. In *Nowels v. Bergstedt,* 120 Ariz. 112, 584 P.2d 576 (App.1978), Division 2 of this court held that the language of A.R.S. § 12–1612(F) (amendment 1976) clearly expresses the legislative intent to preserve judgments timely renewed by successive affidavits, and thus applies retroactively. Judge Richmond filed a specially concurring opinion which states:

While I agree with the reasoning expressed in the majority opinion and its result, I also agree with the legislature that the 1976 amendments to A.R.S. §§ 12–1551 and 12–1612 were clarifications rather than a change in existing law, the dictum in *Coggins v. Wright,* notwithstanding.

*Id.* at 115, 584 P.2d at 579.

We agree that successive timely judgment renewals have always been authorized by statute in Arizona. Thus, De Anza's lien never advanced in priority, and has always been subordinate to FDIC's lien. Accordingly, we hold that the 1976 amendment to A.R.S. § 12–1612 did not destroy any vested rights of De Anza.

---

1. Though *Coggins* was a Division 1 case, it was in fact heard by Division 2 judges, as authorized by A.R.S. § 12–120(E).

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion.

FROEB, P.J., and BROOKS, J., concur.